# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 06 CR 324-31 |
| | ) | |
| | ) | |
| ELGIN CURB | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Elgin Curb's ("Curb") sentencing. Based on the reasons stated below, we find that Curb qualifies as a "manager or supervisor" and is subject to a three-level offense level enhancement, pursuant to Section 3B1.1(b) of the United States Sentencing Guidelines ("Section 3B1.1(b)").

## BACKGROUND

Curb was charged in a multi-defendant criminal drug conspiracy and on September 8, 2008, pursuant to a written plea agreement, Curb entered a plea of guilty to Count I of the Indictment, which charged Curb with conspiracy to possess with the intent to distribute a controlled substance. A sentencing hearing was scheduled for January 13, 2009. On January 6, 2009, the Government filed an

1

objection to the Presentence Investigation Report ("PSR") challenging the assessment by the Probation Department that Curb does not qualify for the "manager or supervisor" enhancement ("managerial enhancement") enumerated in Section 3B1.1(b). Curb subsequently filed a motion to continue the sentencing date and for a ruling on Curb's role in the offense. The court granted Curb's motion and scheduled an evidentiary hearing on January 13, 2009, as to the issue of Curb's role in the conspiracy.

On January 13, 2009, the court held an evidentiary hearing on the issue of Curb's role in the criminal conspiracy. At the hearing, the Government called as a witness Lamont Harris ("Harris") who is a co-Defendant in the instant action. Harris testified that sometime in 2004 he was approached by Curb while playing basketball and that Curb asked Harris if he would like to "hustle" for the conspiracy, which Harris testified meant to sell drugs. Harris testified that, within an hour of being recruited, he agreed to act as a pack worker selling crack cocaine and heroin for the conspiracy. Harris testified that between 2004 and the summer of 2005, (1) Curb provided Harris with drugs to sell once a week, (2) Curb decided the quantity of drugs to provide to Harris for sale, (3) Curb, on occasion, when he was around, directed potential customers to Harris, and (4) Curb collected the proceeds of Harris' drug sales and Harris received a small share. Harris testified that he was incarcerated on a separate charge in the summer of 2005 and that, after his release, he met with Curb and co-Defendant Terrell Covens ("Covens"), the main leader of the conspiracy, at which time Harris was promoted by Covens with support from Curb to

a greater role as a "runner" in the conspiracy. Harris testified that from that point on, Harris received larger quantities of heroin and crack cocaine and made weekly deliveries of narcotics to other pack workers. Harris testified that the term "runner" designated an individual in the conspiracy who supplied and distributed drugs to the pack workers in the conspiracy, who then sold those drugs to customers. Harris also testified that a "runner" decides to whom in the conspiracy to supply drugs and the quantities of such drugs.

Curb did not call any witnesses at the evidentiary hearing and relied on three exhibits: (1) a chart summarizing the plea agreements of various co-Defendants in the instant action, detailing the statements that were made by co-Defendants with reference to Curb, and noting the absence of statements referencing Curb by certain co-Defendants, (2) a copy of a portion of the Government's version of events as included in the criminal complaint against Curb, and (3) the report of an agent who interviewed Harris in June 2006 after Harris agreed to cooperate with the Government. The June 2006 report was offered for the purpose of impeachment with respect to Harris' testimony.

**DISCUSSION**

The Government has taken the position that a preponderance of the evidence establishes that Curb was a manager or supervisor in the criminal conspiracy and is, thus, eligible for the three-level managerial enhancement, pursuant to Section 3B1.1(b). U.S.S.G. § 3B1.1(b). Curb takes the position that a preponderance of the

evidence does not establish that Curb was a manager or supervisor in the criminal conspiracy and is not subject to the managerial enhancement.

It is the Government's burden to establish by a preponderance of the evidence that Curb acted as a manager or supervisor in the conspiracy and is thus subject to the managerial enhancement. *United States v. Stott*, 245 F.3d 890, 912 (7th Cir. 2001); *United States v. Frazier*, 213 F.3d 409, 417 (7th Cir. 2000). There is no explicit definition of the term "manager" or the term "supervisor" in the United States Sentencing Guidelines. However, in determining whether a defendant qualifies for such a designation, an application note to Section 3B1.1(b) suggests that the following factors should be considered: "(1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning and organizing the offense; (6) the nature and scope of the illegal activity; (7) the degree of control and authority exercised over others." *United States v. Howell*, 527 F.3d 646, 649 (7th Cir. 2008); U.S.S.G. § 3B1.1(b) (n. 4).

The Government argues that Harris' testimony establishes that Curb acted as a manager or supervisor in the conspiracy and is subject to the managerial enhancement. Specifically, the Government argues that Harris' testimony establishes that Curb was responsible for Harris' recruitment, that Curb exercised control and authority over Harris during the time that Harris was working for Curb as a pack worker, that Curb exercised discretion in determining the quantity of drugs to supply

to Harris and in steering potential customers to Harris, and that Curb received the benefits of a larger share in the criminal proceeds than Harris.
Finally, the Government argues that Harris' testimony establishes that Curb was also at least partially responsible for promoting Harris from the position of a pack worker to the position of a runner after Harris was released from prison in 2005.

     Curb argues that the Government has failed to establish by a preponderance of the evidence that Curb acted as a manager or supervisor in the conspiracy. Curb admits that the evidence establishes that Curb was not at the bottom of the pack in the conspiracy, but argues that nor was he at the top of the pack in the conspiracy. Curb argues that he was just an ordinary participant in the conspiracy. Curb contends that, given the copious amount of documentary, testimonial, and other evidence such as recordings and videos that exist in this case, the Government should be required to provide more than the testimony of Harris to meet its burden. Curb contends that he is not implicated as a manager or supervisor in the overwhelming majority of the evidence available to the Government. Curb also argues that Harris' testimony about Curb's alleged recruitment of Harris lacks credibility and argues that if Curb, in fact, occupied some type of managerial or supervisory role in the conspiracy, other co-Defendants who have also cooperated with the Government, would have attested to such a fact. The Government, however, has pointed to portions of plea agreement documents where other co-Defendants have made statements that indicate that Curb was a manager or supervisor.

     Taking into consideration all of the factors that the court must consider in

assessing a defendant's role in a criminal conspiracy, the court finds that the Government has met its burden of establishing by a preponderance of the evidence that Curb qualifies for the managerial enhancement. The sworn testimony of Harris, a co-Defendant in this case, is relevant to many of the factors that are to be considered for imposing the managerial enhancement. Harris' testimony at the evidentiary hearing was credible. We have considered Curb's arguments that Harris initially gave a statement to the Government that conflicts with his testimony in court relating to his relationship with Curb. We find that Harris' testimony in court is not necessarily in conflict with his prior statements to the Government and to the degree that it is in conflict Harris has explained to the satisfaction of the court the apparent inconsistencies. Notwithstanding Curb's argument that Harris initially told an agent that Covens recruited him, Harris has provided unchallenged testimony in court under oath that it was Curb who recruited him, it was Curb who facilitated not only his entry into the conspiracy but his promotion, it was Curb who supplied him with the drugs to sell to customers, it was Curb who decided the quantities of drugs that Harris could sell, and it was Curb who collected the proceeds of Harris' drug sales. We also note that, although Harris was required to testify pursuant to a cooperation agreement with the Government, Harris testified that he was only required to tell the truth and that failure to tell the truth would nullify his agreement with the Government and would potentially subject him to further criminal liability.

We agree with the Government that Harris' testimony unequivocally indicates that it was, in fact, Curb who recruited Harris to join the conspiracy. For example,

6

Harris testified credibly as to the details of the conversation between Harris and Curb, in which Curb offered Harris the opportunity to work as a pack worker in the conspiracy and to be supplied with crack cocaine and heroin by Curb. Furthermore, Harris' testimony also indicates that Curb did exercise control and authority when he supplied Harris with crack and heroin between 2004 and 2005. Harris' testimony demonstrates that Curb also exercised discretion in determining the amounts of crack cocaine and heroin to be supplied to Harris and, at times, in determining which potential customers to direct to Harris. Finally, Harris' testimony demonstrates that Curb was entitled to a larger share of the fruits of the crime.

The Seventh Circuit stated in *United States v. Hall*, 101 F.3d 1174 (7th Cir 1996) that "a defendant's 'real and direct influence, aimed at furthering the criminal activity, upon one other identified participant,' . . . provides clear support for a managerial enhancement." *Id.* at 1177 (quoting in part *United States v. Mustread*, 42 F.3d 1097, 1103 (7th Cir. 1994)). The Government has established, through Harris' testimony, that Curb recruited Harris and did maintain a "real and direct influence" over Harris between 2004 and 2005. *Id.*

Curb relies on the argument that he cannot be considered to be a manager or supervisor since the evidence clearly establishes that he maintained a position in the conspiracy somewhere below higher members of the conspiracy and somewhere above the lowest members of the conspiracy. Curb argues that in the scheme of the conspiracy he was directly in the middle, acting as an ordinary participant. However, Curb's theory that he, as a middleman between the leaders in the organization and

7

the minor participants, cannot be considered a manager or supervisor, is a theory that has been rejected by the Seventh Circuit. The Seventh Circuit has explicitly stated that "'middlemen are not, of course, immune from application of § 3B1.1,'" and that the "middleman status is not necessarily inconsistent with being a manager or supervisor." *Howell*, 527 F.3d at 649 (quoting in part *United States v. Brown*, 944, F.2d 1377, 1381 (7th Cir. 1991)). The factors that are emphasized by the Seventh Circuit are the "relative responsibility and control over other participants," and in this case the evidence put forth by the Government does establish that Curb did exercise responsibility and control over another member of the conspiracy. *Id.* We are not finding that Curb was the leader of the conspiracy or even one of the higher members. We are merely finding that Curb fits the criteria as a manager or supervisor in the conspiracy under the law, having recruited another member of the conspiracy, having supplied drugs to that member for sale to the public, having determined the quantity of drugs to supply to a member of the conspiracy, and having kept a larger share of the proceeds from the illegal drug sales. Therefore, we find that the Government has met its burden of establishing by a preponderance of the evidence that Curb was a manager or supervisor and is thus subject to a three-level offense level enhancement, pursuant to Section 3B1.1(b).

## CONCLUSION

Therefore, based on the foregoing analysis, we find that Curb is subject to the managerial enhancement pursuant to Section 3B1.1(b).


                               _____
                               Samuel Der-Yeghiayan
                               United States District Court Judge

Dated:   January 15, 2009