**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 CR 324-31 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| ELGIN CURB, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Elgin Curb seeks a sentence reduction pursuant to the First Step Act of 2018. Because his sentence was previously reduced pursuant to Guideline amendments promulgated to implement the provisions of the Fair Sentencing Act of 2010, Mr. Curb is not eligible for a sentence reduction under the First Step Act. Accordingly, his motion is denied.

**I. BACKGROUND**

On September 8, 2008, Curb pled guilty to conspiring to possess with intent to distribute and to distribute controlled substances, namely, 50 grams or more of crack cocaine, 5 kilos or more of cocaine, and 1 kilo or more of heroin, in violation of 21 U.S.C. § 846. In his plea agreement, Curb acknowledged that he was responsible for the distribution of at least 4.5 kilos of crack cocaine and at least 3 kilos of heroin. ECF No. 1261, ¶ 6.[1]

Curb was sentenced on June 3, 2009. Based on the amounts of crack cocaine and heroin for which he had admitted responsibility (a marijuana equivalency of 93,000 kilograms based on the Guidelines drug equivalency table then in effect), Curb's base offense level was 38. The base offense level was increased by three levels for Curb's role in the offense and two levels for

---

[1] Docket citations refer to the docket in this case (06 CR 324) unless otherwise indicated.

obstruction of justice; it was reduced by three levels based on acceptance of responsibility. Sentencing Tr., ECF No. 1557, at 22-24. The final offense level was therefore 40 (38+3+2-3). Curb was in criminal history category I, and the applicable guideline range was 292 to 365 months. Judge Der-Yeghiayan, to whom this case was originally assigned, imposed a below-range sentence of 270 months. Judgment in a Criminal Case, ECF No. 1531.

After Curb was sentenced, Congress enacted the Fair Sentencing Act of 2010 ("FSA") to "restore fairness to Federal cocaine sentencing" and to reduce disparities among defendants convicted of crimes involving cocaine base and power cocaine. Pub. L. No. 111-220, 124 Stat, 2372 (Aug. 3, 2010). The Act amended 21 U.S.C. § 841 by reducing the 100-1 cocaine-crack ratio reflected in the drug equivalency tables to an 18-1 ratio, effectively increasing the amount of cocaine base required to trigger mandatory minimum sentences. Before enactment of the FSA, violations involving 50 grams or more of a mixture or substance containing cocaine base resulted in a mandatory minimum sentence of 10 years (or 20 years if the offense took place following another felony drug conviction). After enactment of the FSA, however, 280 grams or more of a mixture or substance containing cocaine base was required to trigger the minimum sentence. The threshold quantity triggering the mandatory minimum sentence of 5 years (or 10 following another felony drug conviction) also increased, from 5 grams to 28 grams. The FSA did not, however, apply retroactively to defendants who were sentenced before the statute was enacted. *Dorsey v. United States*, 567 U.S. 260 (2012) (FSA retroactive only for defendants sentenced after enactment); *United States v. Robinson*, 697 F.3d 443, 444 (7th Cir. 2012). The FSA itself therefore had no direct bearing on Curb's sentence.

The FSA, however, also provided the Sentencing Commission with emergency authority to make "conforming amendments . . . necessary to achieve consistency with other guideline

provisions and applicable law." FSA § 8. To conform the guidelines to the new mandatory minimums established by the FSA, the Sentencing Commission adopted Amendment 750,[2] which revised the crack cocaine quantity tables listed in § 2D1.1(c) so that the quantities required to trigger the mandatory minimums carried offense levels consistent with those applicable for other drugs, with proportional adjustments for drug quantities above and below those triggering quantities. See U.S.S.G. app. C, amends. 706 and 750 (2011).[3] The retroactive revision of the offense levels applicable to crack cocaine offenses made it possible for defendants like Mr. Curb, who had been sentenced based on guideline ranges tied to the lower triggering quantities for mandatory minimum sentences, to obtain sentencing reductions where the new crack offense level quantities provided a lower guideline range (provided that the lower range was not constrained by the applicable mandatory minimum sentence in effect when they were sentenced (because, again, the FSA itself was not retroactive). *See Robinson*, 697 F.3d at 444.

And, indeed, shortly after Amendment 750 was adopted, Mr. Curb sought and obtained a sentencing reduction based on the lower crack offense levels promulgated by the Sentencing Commission in order to implement the FSA.[4] The Government agreed that Curb qualified for a

---

[2] The Sentencing Commission first promulgated temporary emergency amendments to the drug quantity tables in Amendment 748, which were not retroactive. Those amendments were made permanent by Amendment 750, effective November 1, 2011. Amendment 750, in turn, was made retroactive by Amendment 759. *See* U.S.S.G. app. C, amend. 759 (2011).

[3] As explained in Amendment 750, to account for the FSA's changes to the amounts required to trigger application of mandatory minimum sentences, "the amendment conforms the guideline penalty structure for crack cocaine offenses to the approach followed for other drugs, i.e., the base offense levels for crack cocaine are set in the Drug Quantity Table so that the statutory minimum penalties correspond to levels 26 and 32 . . . . [O]ther offense levels are established by extrapolating proportionally upward and downward on the Drug Quantity Table."

[4] At about the same time, Curb also filed a motion pursuant to 28 U.S.C. § 2255 to vacate his sentence based on prosecutorial misconduct and ineffective assistance of counsel. See Case No. 11 CV 8355. That motion was denied. Case 11 CV 8355, ECF Nos. 5, 6, and 7.

sentence reduction pursuant to Amendment 750 and Judge Der-Yeghiayan granted Curb's motion. The amendment reduced Curb's base offense level by two levels, thereby reducing his guideline range to 235 – 293 months. Judge Der-Yeghiayan reduced Curb's sentence from 270 months to 235 (which was the low end of the revised Guidelines range). ECF No. 1898.

Mr. Curb subsequently received another sentence reduction in 2015 following Amendment 782 to the Guidelines, which "reduced by 2 levels the base offense levels assigned to drug quantities in § 2D1.1." *United States v. Taylor*, 778 F.3d 667, 672 (7th Cir. 2015). Application of Amendment 782 reduced Curb's base offense level from 36 to 34, reduced the final offense level from 38 to 36, and reduced his Guidelines range to 188 – 235 months of imprisonment. On Curb's motion, and without objection by the Government, Judge Der-Yeghiayan again reduced Curb's sentence again to the low-end of this newly applicable range, 188 months. ECF No. 2209. That is where his sentence presently stands.[5]

## II. ANALYSIS

Mr. Curb now seeks a further sentence reduction based on the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (effective Dec. 21, 2018) ("First Step Act"). As relevant here, Section 404 of the First Step Act allows courts to reduce defendants' sentences by applying the FSA retroactively. Courts may impose a reduced sentence "as if sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed." FSA § 404(b). This provision grants discretion to the sentencing court, but does not require the court to reduce sentences of eligible defendants.

---

[5] According to the Bureau of Prison's inmate locator, Mr. Curb's projected release date is June 23, 2023.

Curb's motion asks the Court "to resentence him to the low-end of the new Guideline range." First Step Motion, ECF No. 2426, at 2. But the First Step Act does not affect the Guidelines range applicable to Curb's offense. The First Step Act simply makes the changes to the mandatory minimum sentences introduced by the FSA retroactive. The only way those changes can affect a guideline range is if a crack cocaine mandatory minimum sentence had supplanted the otherwise applicable guideline range prior to enactment of the FSA and the implementation of Amendment 750. That did not happen with respect to Mr. Curb.

Had the FSA been in effect when Curb was sentenced—which is to say, if the threshold for a 5-year mandatory minimum sentence had been 28 grams of crack and the threshold for a 10-year mandatory minimum sentence had been 280 grams—Curb's guideline range would have been no different. That is because the amount of crack cocaine involved in Curb's offense was far in excess of even the increased quantities necessary to trigger a mandatory minimum sentence. The 4.5 kilos of crack cocaine for which Mr. Curb acknowledged responsibility carried a base offense level of 38 and, in combination with other enhancements and reductions, produced an adjusted offense level of 40 and a sentencing range of 292 to 365 months. Judge Der-Yeghiayan imposed a sentence of 270 months, below that range but still well above the mandatory minimum sentence of 10 years (120 months) even based on the higher drug quantity thresholds that would have applied had the FSA been in effect at the time. This is not a case where the defendant would have qualified for a lower sentence but for a mandatory minimum penalty.

The change in the mandatory minimum penalties under section 2 of the FSA, then, provides no reason to reduce Curb's sentence.[6] The First Step Act does not grant courts a general license to

---

[6] It should also be noted that the FSA did not change the mandatory minimum sentences applicable for heroin offenses. Even if the FSA's changes to the crack cocaine quantity were relevant to the quantities of crack cocaine as to which Curb admitted responsibility, he still would

5

resentence defendants convicted of pre-FSA crack cocaine offenses.[7] It authorizes sentence reductions where retroactive application of the FSA's higher mandatory minimum penalty triggering quantities would allow the court to reduce the sentence below the previously applicable mandatory minimum. The increased mandatory minimum penalty quantities prescribed by the FSA, however, had no effect on Curb's sentence, so resentencing Mr. Curb "as if" the FSA had applied at the time of the offense would change nothing. The sentence imposed if the FSA had been in effect would have been precisely the same: 270 months. And because § 404(b) of the First Step Act authorizes courts only to "impose a reduced sentence as if sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed," where making the FSA retroactive would have no effect on the defendant's sentence, no sentence reduction is authorized. *See*, *e.g.*, *United States v. Jones*, No. CR 94-0067-WS, 2019 WL 1560879, at *2 (S.D. Ala. Apr. 9, 2019) (where retroactive application of FSA would not have altered defendant's sentence, the First Step Act provides no sentencing relief). Making the FSA retroactive does nothing for Mr. Curb because his sentence was never affected by the pre-FSA mandatory minimums and that is reason enough to deny his motion.

For defendants like Mr. Curb, whose sentences were not based on the pre-FSA mandatory minimum penalties, the First Step Act can be read to authorize a sentence reduction only if

---

have faced the same mandatory minimum ten-year sentence because he was also charged with and admitted to responsibility for more than a kilogram of heroin. That quantity of heroin was sufficient to trigger the same mandatory minimum even if Curb had no involvement with crack cocaine.

[7] "Nothing in the plain language of [the First Step Act] states, or even suggests, that the Court conduct a full resentencing "applying current, applicable law," or the law in effect when the Fair Sentencing Act took effect." *United States v. Glover*, No. 95-08021-CR, 2019 WL 1562833, at *9 (S.D. Fla. Apr. 11, 2019). Indeed, it is noteworthy that the statute authorizes not resentencing but only the imposition of "a reduced sentence." *See Dillon v. United States*, 560 U.S. 817, 826 (2010) (Section 3582(c)(2)'s authorization to modify or reduce sentences based on lowered guideline ranges "does not authorize a sentencing or resentencing proceeding").

references to the FSA are interpreted to include the amendments to the sentencing guidelines that were necessary to implement the FSA's higher mandatory minimum sentence threshold. In his opening brief, Mr. Curb appears to tack in this direction, expressly requesting a sentence at "the low-end of the new Guideline range." Motion, ECF No. 22426, at 2.[8] In referring to the "new" guideline range that would apply had the FSA been in effect, Mr. Curb is presumably referring to the revised range that resulted from applying the reduced offense levels promulgated as the result of Amendment 750. That amendment, again, was adopted so that guideline offense levels would "conform" to the new mandatory minimums set forth in the FSA and "achieve consistency with other guideline provisions and applicable law." And had Amendment 750 been in effect at the time Curb was sentenced, his guidelines range would have been lower. As discussed above, that Amendment had the effect of lowering Curb's guidelines range from the original range of 292-365 months to 235 – 293 months. And as authorized by 18 U.S.C. § 3582(c)(2) and Guideline § 1B1.10, Mr. Curb sought and obtained a sentence reduction predicated on the Guideline's implementation of the amendments to the drug quantities triggering application of mandatory minimum sentences for crack cocaine offenses.

Because Curb has already received a sentence reduction in accordance with the FSA amendments and implementing guideline amendments, the Government argues that Curb is ineligible for any further reduction based on the First Step Act. Section 404(c) of the First Step Act, the Government points out, states that "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in

---

[8] Curb's motion also, inconsistently, requests "a below guideline sentence, due to the § 3553(a) factors that granted relief at the original sentencing, and for the court to consider the progress that has been made during the time of the Defendant's incarceration (i.e., GED, Unicor, Drug Assessment Programming, etc.)."

accordance with the amendments made by sections 2 and 3 of the [FSA]." *See* Govt. Resp., ECF No. 2439.

Although the argument in his opening brief regarding a new guideline range appears to accept the premise that the resentencing permitted by the First Step Act should be based on the guidelines adopted to implement the FSA (namely, Amendment 750), in his reply brief, Mr. Curb argues in response that § 404(c) does not make ineligible those defendants who have previously received sentencing reductions as the result of guidelines amendments. Curb argues that the text refers to, and therefore only reaches, defendants whose sentences were previously reduced by the FSA itself rather than by guideline amendments promulgated in the wake of the FSA. In other words, he argues that the text of § 404 should be read to apply only to statutory changes expressly set forth in the FSA, not to the Guidelines amendments that followed and implemented the statutory changes set forth in the FSA.

Apart from the fact that it is inconsistent with his opening brief, Curb's textual argument is unpersuasive. As an initial matter, there are no defendants who obtained, prior to enactment of the First Step Act, reduced sentences by invoking sections 2 or 3 of the FSA. That is because the FSA itself did not authorize any sentencing reductions. *United States v. Bailey*, 777 F.3d 904, 907 (7th Cir. 2015) ("the FSA itself does not provide an independent basis for a sentence reduction") (internal quotation marks omitted). Standing alone, the FSA changed only the mandatory minimum sentences applicable to crack cocaine offenses on a prospective basis. If § 404(c) is read as Mr. Curb advocates, then its language about sentences previously "reduced in accordance with the amendments made by sections 2 and 3 of the [FSA]" would be a nullity. The only way any sentence has ever been reduced "in accordance with" the FSA is by means of the "conforming amendments" to the guidelines that permitted sentence reductions—namely Amendment 750.

Mr. Curb's interpretation of § 404(c), moreover, reads the statutory language too narrowly. As Curb reads it, § 404(c) renders ineligible for further sentencing reduction only defendants who previously obtained sentence reductions expressly authorized by the text of sections 2 or 3 of the FSA. If that were the case, there would be no need for the phrase "in accordance with;" the statute would just bar motions to reduce a sentence if the sentence had been previously reduced **by** sections 2 or 3. The statutory language, which employs the phrase "in accordance with," rather than "by," is necessarily broader.[9] To be "in accordance" does not require precise equivalency, but only agreement, conformity, or consistency. *See* RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1987) (defining "accordance" as "agreement; conformity" and "consistent" as "accordant"). In barring further sentencing relief for defendants who have previously obtained a sentencing reduction "in accordance with" the FSA, the First Step Act therefore includes not only those defendants whose sentences were reduced by the FSA statutory amendments, but also those who obtained reductions pursuant to Guidelines amendments consistent with the statutory changes. That includes defendants who obtained reductions authorized by Amendment 750 to the Guidelines. *Bailey*, 777 F.3d at 906 (a sentence that has been based on the drug quantity changes made by Amendment 750 has "already accounted for the FSA.").

This interpretation follows from the Seventh Circuit's recognition that Amendment 750 was adopted "to implement" the FSA amendments to mandatory minimum sentences applicable to crack cocaine offenses. *United States v. Taylor*, 778 F.3d 667, 669 (7th Cir. 2015). *See also*, *e.g.*, *United States v. Currie*, 571 Fed. App'x 492, 494 (7th Cir. 2014) (FSA "called for" guideline

---

[9] In other words, the statute would read: "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced ***by*** the amendments" to sections 2 and 3 of the FSA. But as written, the statute encompasses more, extending not just to sentences reduced ***by*** the FSA, but also sentences reduced "***in accordance with***" the statute.

amendments to reduce crack cocaine offense levels). Indeed, the FSA itself directed the Sentencing Commission to adopt "conforming amendments . . . necessary to achieve consistency with other guideline provisions and applicable law." FSA § 8. As the Supreme Court has explained, "[r]ead most naturally, 'applicable law' refers to the law as changed by the Fair Sentencing Act, including the provision reducing the crack mandatory minimums. . . . [A]chieving consistency with 'other guideline provisions' means reducing the base offense levels for all crack amounts proportionally . . . ." *Dorsey*, 567 U.S. at 276. In short, the sentencing changes wrought by the FSA included not only the change in the quantities needed to trigger application of the mandatory minimum sentences but also the Guideline amendments necessary to implement those statutory changes. And to assess whether one has obtained relief "in accordance with" the FSA, then, one must consider whether the conforming amendments of the guidelines provided such relief.

They did. As discussed above, Mr. Curb moved pursuant to 18 U.S.C. 3582(c)(2) for a sentence reduction based on the reduced offense levels promulgated by Amendment 750. Applying the methodology set forth in Guideline § 1B1.10, Judge Der-Yeghiayan calculated Curb's sentencing range using the lower crack cocaine offense level promulgated by Amendment 750 and reduced his sentence to the low end of that new range (which was as low as he was permitted to make the sentence under the binding restriction of § 1B1.10(b)(2)(A)).[10] That was a sentencing reduction "in accordance with" the changes the FSA made to the crack cocaine quantities triggering mandatory minimum sentences.

Curb's reading also fails to persuade because it would result in an anomaly that is at odds with the intent of Section 404. The evident purpose of the First Step Act in making the FSA

---

[10] Section 1B1.10 of the Guidelines is binding with respect to sentence reductions pursuant to § 3582(c)(2). *United States v. Dillon*, 560 U.S. 817, 819 (2010).

retroactive is to put defendants on equal footing with defendants who were sentenced after the FSA was enacted. But Curb's reading would put defendants who were sentenced before the FSA in a ***better*** position than those who were not, by giving them an opportunity for an additional sentence reduction that is not available to those sentenced after the FSA was enacted. Curb offers no reason to think that Congress would choose to favor the former over the latter and the Court can imagine none. Curb's interpretation would exacerbate, rather than reduce, the sentencing disparities arising from differences in the statutory and Guideline provisions applicable to offenses involving cocaine base and cocaine at various times.

### III. Conclusion

Sentencing Mr. Curb "as if" the FSA had been in effect would change nothing. The mandatory minimum sentences under the FSA were irrelevant to the sentence that was imposed, and Mr. Curb has already had the benefit of the Guidelines amendments promulgated to implement the FSA's changes. For both these reasons, the Court concludes that the First Step Act does not authorize a further sentence reduction for Mr. Curb and his motion is therefore denied.

Dated: May 7, 2019

/s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge